UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

EDWARD LEFLORE,                          )
                                         )
              Plaintiff,                 )
                                         )
       v.                                )        No. 1:19-cv-04279-JMS-MG
                                         )
CHARLES HOUCHINS,                        )
                                         )
              Defendant.                 )

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Edward LeFlore claims that Officer Charles Houchins terminated his prison employment as a law library clerk in retaliation for filing a civil rights lawsuit against prison officials. Mr. LeFlore's arguments that his lawsuit was a motivating factor for his termination are based on speculation rather than admissible evidence. Accordingly, Officer Houchins' motion for summary judgment is **GRANTED**.

## I. SUMMARY JUDGMENT STANDARD

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Com. Schools*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Community Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The Court is only

required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. FACTUAL BACKGROUND

Mr. LeFlore began working as a law library clerk at Pendleton Correctional Facility ("Pendleton") in 2015. Dkt. 154-5, p. 13. His duties included assisting other prisoners with their legal proceedings and servicing prisoners in restrictive housing. *Id.* at 13. He worked five days a week, beginning in the morning and ending in the mid-afternoon, and earned the highest available hourly wages for prison employment ("A Pay"). *Id.* at 23-24, 73-74. In his annual performance evaluations for 2015, 2016, and 2017, Mr. LeFlore's performance was assessed as above average. Dkt. 167-1, pp. 169-71.

On February 21, 2018, Mr. LeFlore filed a civil rights lawsuit against Pendleton officials. *See LeFlore v. Lemon, et al.*, Case No. 1:18-cv-503-TWP-DML, dkt. 1. Officer Houchins was not named as a defendant. *Id.* The Court screened Mr. LeFlore's complaint and issued Notices of Lawsuit and Requests for Waiver of Service on the defendants. *See id.* at dkt. 16 (April 24, 2018, Notice and Waiver Request); dkt. 24 (July 12, 2018, Notice and Waiver Request). The defendants waived service in that lawsuit and appeared by counsel on August 10, 2018. *Id.* at dkts. 26-33.

On June 28, 2018, Pendleton's Office of Investigation and Intelligence ("OII") learned about suspicious incoming legal mail addressed to prisoners William Eberly and Hozyfa Sultan. Dkt. 154-1, p. 1. The mail was purportedly from the Allen County Department of Child Services. *Id.* OII determined that this "legal mail" had been soaked in synthetic drugs and suspected that the mail would have been delivered to the law library, at which point prisoners would have used their law library access to distribute the drug-soaked papers throughout the facility. *Id.* at 1-2.

On July 2, 2018, OII officers entered the law library to search for papers contaminated with synthetic drugs. *Id.* at 2. All prisoners who were in the law library at that time, whether they were prisoner-employees or prisoners visiting the library on a pass, were told to leave their papers and exit the library. Dkt. 154-5, p. 29. At the time, Mr. LeFlore was working on his civil rights lawsuit, and he left the paperwork related to the lawsuit at his workstation. *Id.* Mr. LeFlore was taken to a separate room where he was strip searched and told to return to his housing unit. *Id.* at 29-30, 34.

After the prisoners left the law library, OII officers conducted a K-9 search for synthetic drugs.[1] Dkt. 154-1, p. 2. The K-9 alerted to papers near the workstations of three law library clerks: Mr. LeFlore, Kerry Silvers, and Jay Vermillion. Dkt. 154-1, p. 2. OII officers also discovered a cell phone and charger at the workstation of law library clerk Michael Lane. *Id.*[2]

Officer Houchins held the position of Lead Investigator for OII in July 2018. Dkt. 154-2. He did not participate in the search of the law library. Dkt. 154-5, p. 33. On July 5, 2018,

---

[1] In his brief in opposition to summary judgment, Mr. LeFlore argues that OII did not perform a K-9 search of the law library on July 2. *See generally* dkt. 166. But in his deposition, Mr. LeFlore testified that he left the law library after he was strip searched and that he has no evidence to support his claim that OII did not conduct a K-9 search after he left. Dkt. 154-5, p. 51. OII's Report of Investigation states that OII did perform a K-9 search of the law library, and there is no admissible evidence to the contrary. Dkt. 154-1, p. 2. Thus, the fact that OII performed a K-9 search on July 2 is undisputed for purposes of summary judgment. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: consider the fact undisputed for purposes of the [summary judgment] motion.").

[2] Mr. LeFlore states in an affidavit that OII officers conducted a second search of the law library sometime between July 2 and July 5, 2018, dkt. 167, p. 2, para. 7, but this claim is not based on personal knowledge, nor is it supported by any documentary evidence. Mr. LeFlore admits that he was not allowed to return to the law library until July 6, 2018, and that he "had to infer what occurred during the second search from [what] I observed and the actions I performed after I was allowed back into the law library on July 6, 2018." *Id.* But all Mr. LeFlore observed in the law library on July 6 was that paperwork had been strewn about the workstations in a disorganized fashion. *Id.* at p. 2, para. 8. Federal Rule of Civil Procedure 56(c) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Because Mr. LeFlore's assertion about a second law library search is not made on personal knowledge, his affidavit is not evidence that a second search occurred.

3

Officer Houchins communicated his decision to other prison officials that Mr. LeFlore, Mr. Silvers, Mr. Vermillion, and Mr. Lane would not be allowed to return to their positions in the law library. Dkt. 154-2.[3]

On July 9, 2018, Mr. LeFlore was informed by his supervisor that he was no longer an employee of the law library. Dkt. 154-5, pp. 34-35; Dkt. 167-1, p. 3, para. 9. The supervisor did not provide Mr. LeFlore with a reason for his termination. Dkt. 167-1, p. 3, para. 9.

Mr. LeFlore filed a number of grievance documents and classification appeal documents regarding his termination from the law library. *See* dkt. 164-1, pp. 70-73, 148-63. In response to Mr. LeFlore's Request for Interview on July 11, 2018, OII Officer Brock Turney stated that Mr. LeFlore and the other clerks were terminated from the law library for safety and security reasons following the search on July 2. *Id.* at 72. In response to Mr. LeFlore's Request for Interview form on June 9, 2019, in which Mr. LeFlore asked to be reinstated as a law library clerk, Officer Turney stated that OII had not approved Mr. LeFlore to return to the law library, and his request for reinstatement was denied for safety and security reasons. *Id.* at 154.

Following his termination from the law library, Mr. LeFlore was offered employment in the Pendleton kitchen, which he declined. Dkt. 154-5, p. 73.  Some months later, he was hired as a recreation clerk, and his hourly wages were eventually raised to the level he had earned as a law library clerk. *Id.* at 70, 74. He now makes more money as a recreation clerk than he made as a law library clerk because recreation clerks work seven days a week instead of five. *Id.* at 74.

---

[3] Much of the information about OII's investigation comes from the OII Report of Investigation and emails between prison officials. *See* dkts. 154-1, 154-2. In his response and surreply, Mr. LeFlore challenges the admissibility of these documents. *See* dkt. 166, pp. 6-18; dkt. 172. But Mr. LeFlore has also designated these same documents as evidence in opposition to the motion for summary judgment. *See* dkt. 167-1, pp. 86-95. The Court finds that Mr. LeFlore has waived his objections to the admissibility of these documents by designating these documents as evidence, and the OII Report of Investigation and emails are deemed admitted for purposes of summary judgment.

### III. DISCUSSION

Mr. LeFlore claims that Officer Houchins terminated him from his job as a law library clerk in retaliation for filing a civil rights lawsuit against Pendleton officials, in violation of the First Amendment. *See* dkt. 17 (screening order).

Courts apply a burden-shifting analysis to determine whether there is a triable issue of fact on First Amendment retaliation claims. *Bless v. Cook County Sheriff's Office*, 9 4th 565, 571 (7th Cir. 2021). To make a *prima facie* case of retaliation, Mr. LeFlore must demonstrate (1) that he engaged in a protected First Amendment activity; (2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) that the First Amendment activity was at least a motivating factor in Officer Houchins' decision to take the adverse action. *Id.* If Mr. LeFlore can establish a *prima facie* case, the burden would then shift to Officer Houchins to set forth a non-retaliatory basis for the adverse action. *Id.* at 573. Then, the burden would shift back to Mr. LeFlore to show that Officer Houchins' proffered basis for the adverse action was a pretext, or a "phony excuse," that is unworthy of credence. *Id.* If Mr. LeFlore can present evidence that would allow a reasonable factfinder to conclude that Officer Houchins' purported non-retaliatory basis was a pretext, Mr. LeFlore's claim would survive summary judgment and proceed to trial. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).

Officer Houchins does not dispute that Mr. LeFlore's civil rights lawsuit was protected First Amendment activity or that his termination from the law library was an adverse action likely to deter future First Amendment activity. *See generally* dkt. 155. Instead, he argues that Mr. LeFlore's civil rights lawsuit was not a motivating factor for his termination because (1) there is no evidence that Officer Houchins was even aware of Mr. LeFlore's lawsuit at the time of his termination; (2) there is no direct or circumstantial evidence that the termination was motivated by his lawsuit;

and (3) even if Mr. LeFlore could demonstrate a *prima facie* case of retaliation, the undisputed evidence shows that his termination was motivated by non-retaliatory security reasons following the law library search on July 2, during which papers contaminated with synthetic drugs were found near Mr. LeFlore's workstation. *Id.* at 8-11.

In response, Mr. LeFlore argues that his 2018 civil rights lawsuit was filed and screened by the Court before his termination, which supports a reasonable inference that Officer Houchins was aware of the lawsuit when he terminated Mr. LeFlore from his job at the law library. Dkt. 166, p. 19. He also argues that "Def. Houchins has not and cannot produce any test results that would confirm that the mail at the heart of [t]his matter was soaked with synthetic drugs" or that "a subsequent search of the law library revealed several items of contraband." *Id.* at 19-20. Finally, Mr. LeFlore argues that he, Silvers, Vermillion, and Lane "were singled out and terminated . . . since all the clerks were not terminated, it is indisputable that Plaintiff would not have been terminated if the OII had not confiscated his paperwork, searched through it, and learned that he had filed the 2018 lawsuit." *Id.*

Mr. LeFlore has not established a *prima facie* case of retaliation because the evidence does not allow a reasonable inference that his civil rights lawsuit was a motivating factor for his termination from the law library. Evidence that First Amendment activity was a "motivating factor" for an adverse action "may include suspicious timing, ambiguous statements, behavior, or comments directed at other[s] . . . in the protected group." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). But "suspicious timing alone will rarely be sufficient to create a triable issue because suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Id.* at 681.

The only evidence that arguably supports the "motivating factor" element is suspicious timing, as Mr. LeFlore had recently filed a civil rights lawsuit against several Pendleton officials and was working on this lawsuit just before the July 2 search of the law library. But this timing, without more, does not create a reasonable inference that the lawsuit was in fact a motivating factor for his termination. There is no evidence that Officer Houchins was even aware of the civil rights lawsuit; he was not named as a defendant in that lawsuit, and the Pendleton officials who were named as defendants did not appear in that lawsuit until August 10, 2022—more than one month *after* Mr. LeFlore was terminated. *LeFlore*, Case No. 1:18-cv-503-TWP-DML, dkts. 26-33.

Mr. LeFlore argues that Officer Houchins *could have* learned about his civil rights lawsuit because other OII officers may have read his paperwork when they searched the law library on July 2 and communicated their findings to Officer Houchins. But this argument stacks inference upon inference, none of which are supported by admissible evidence. First, Mr. LeFlore asks the Court to infer that OII officers learned about his lawsuit by reading his paperwork during the July 2 search of the law library. Then, he asks for an inference that these officers communicated the fact that Mr. LeFlore was suing Pendleton officials to Officer Houchins. And finally, he asks for an inference that Officer Houchins' termination of Mr. LeFlore was motivated by his knowledge of the lawsuit.

This chain of inferences may be *conceivable*, but the inferences are not *reasonable* for purposes of summary judgment, as they are rooted in speculation rather than admissible evidence. *See Perez v. Staples Contract & Commercial LLC*, 31 F.4th 560, 571 (7th Cir. 2022) ("nor is a 'conceivable' inference necessarily reasonable at summary judgment"); *Streckenbach v. Meisner*, 768 F. App'x 565 (7th Cir. 2019) (rejecting a prisoner-plaintiff's argument in a retaliation lawsuit that the defendant "must have learned about his lawsuit because the prison is a small place and

word gets around" because "neither speculation nor suspicious timing—without more—is enough to survive summary judgment").

Because Mr. LeFlore has failed to demonstrate a prima facie case of retaliation, the burden has not shifted to Officer Houchins to demonstrate a non-retaliatory basis for his termination. Mr. LeFlore's arguments about a lack of chemical testing and the failure of Officer Houchins to fire all of the Pendleton law library clerks are arguments for pretext and are thus immaterial. In any event, the Court observes that the OII Report of Investigation states that a K-9 alerted to the paperwork near Mr. LeFlore's workstation. Dkt. 154-1, p. 2. Further, Officer Houchins terminated all four law library clerks—LeFlore, Silvers, Vermillion, and Lane—who were suspected of possessing contraband following the July 2 search. *Id.*; dkt. 154-2. The evidence does not support a reasonable inference that Silvers, Vermillion, and Lane were each singled out for suing Pendleton officials, or that the law clerks who kept their positions after the July 2 search had refrained from suing Pendleton officials.[4]

## IV. CONCLUSION

For the reasons explained above, Officer Houchins' motion for summary judgment, dkt. [154], is **GRANTED**. Final judgment in accordance with this Order shall now issue.

**IT IS SO ORDERED**.

Date: 6/23/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[4] In an affidavit, Mr. Vermillion states that he had previously sued "a number of high level IDOC officials." Dkt. 167-1, p. 145, para. 5. His affidavit does not indicate whether any of the defendants were Pendleton officials or whether Officer Houchins knew about this lawsuit. There is no evidence that Mr. Silvers or Mr. Lane had sued Pendleton officials. *See id.* at 164-65 (Silvers Affidavit), 166-67 (Lane affidavit).

Distribution:

EDWARD LEFLORE
942371
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Peter Andrew Inman
INDIANA ATTORNEY GENERAL
peter.inman@atg.in.gov

Lauren Ashley Lattea
INDIANA ATTORNEY GENERAL
lauren.lattea@atg.in.gov